1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   L.S.,                                    No.  2:24-cv-02849-DAD-SCR

12              Plaintiff,

13       v.                                   ORDER GRANTING PLAINTIFF'S MOTION
                                              TO PROCEED BY WAY OF PSEUDONYM
14   HAPPY HIPPO LLC,                         AND GRANTING IN PART DEFENDANT'S
                                              MOTION TO DISMISS
15              Defendant.
                                              (Doc. Nos. 3, 10)
16

17

18          This matter is before the court on plaintiff's motion to proceed pseudonymously and

19   defendant's motion to dismiss plaintiff's complaint.  (Doc. Nos. 3, 10.)  On January 21, 2025,

20   defendant's motion to dismiss was taken under submission pursuant to Local Rule 230(g).  (Doc.

21   No. 17.)  For the reasons explained below, the court will grant plaintiff's motion to proceed

22   pseudonymously and will also grant in part defendant's motion to dismiss.

23                               **BACKGROUND**

24          On October 10, 2024, plaintiff L.S. filed his complaint initiating this false advertising

25   class action.  (Doc. No. 1.)  In his complaint, plaintiff alleges the following.

26          Defendant sells a variety of products (the "Products") containing kratom in powder,

27   capsule, and liquid extract forms.  (*Id.* at ¶ 1.)  Kratom is a substance which can be derived from

28   the leaves of trees indigenous to southeast Asia.  (*Id.* at ¶ 8.)  Kratom is commonly used as a drug

1    and "has been used in herbal medicine since the 19th century" when it was noted that people in

2    Malaysia would use kratom as a substitute for opium. (*Id.* at ¶¶ 8, 9.) Kratom contains chemicals

3    referred to as "alkaloids" which can produce psychoactive effects when ingested. (*Id.* at ¶ 13.)

4    The primary alkaloids present in kratom interact with the mu-opioid receptor in the human brain

5    when ingested. (*Id.* at ¶ 15.) Interactions with the mu-opioid receptor can produce "addictive or

6    habit-forming effects" such as euphoria. (*Id.*) Because of this interaction, health professionals

7    have referred to kratom as a "quasi-opiate" because it produces effects similar to opioids. (*Id.* at

8    ¶¶ 16, 17.) Kratom creates a high risk of addiction and users of kratom can experience

9    withdrawal symptoms if they stop taking the drug. (*Id.* at ¶¶ 19, 20.) The symptoms of kratom

10   withdrawal include "irritability, anxiety, difficulty concentrating, depression, sleep disturbance,

11   [sic] including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms,

12   diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and

13   malaise." (*Id.* at ¶ 20.)

14        In the United States, kratom use has greatly expanded over the past decade, with

15   approximately 11 to 15 million annual users of kratom living in the United States. (*Id.* at ¶ 24.)

16   Kratom is often "marketed as a safe substitute for painkillers[,]" is widely available, and is

17   unregulated in the United States. (*Id.* at ¶ 25.) Though kratom does create a "pleasurable" high,

18   it is such that users can take kratom daily without realizing that they are developing an addiction.

19   (*Id.* at ¶ 27.) The addictive properties of kratom have been well-documented in other countries

20   and been studied since at least 1988. (*Id.* at ¶ 32.) Plaintiff alleges "[u]pon information and

21   belief" that defendant has interacted with growers and distributors of kratom who disclosed the

22   addictive nature of the drug. (*Id.* at ¶ 33.) Defendant has received "numerous user reports" about

23   the addictive potential of kratom in the United States. (*Id.* at ¶ 34.) From this, plaintiff alleges

24   that defendant knew or should have known that kratom users could develop an addiction but

25   failed to disclose this material fact to purchasers of its products. (*Id.* at ¶ 40.)

26        In his complaint, plaintiff includes photographs of the front of the packaging of several of

27   the Products. (*Id.* at ¶ 41.) On its website, defendant describes one of its energy shot products as

28   "sugar-free[,]" "caffeine-free[,]" and that it can promote "acute focus, concentration, and appetite

1    suppression[.]"  (*Id.* at ¶ 42.)  None of the packaging contains any warning that the Products

2    interact with opioid receptors, are addictive, should not be taken on a daily basis, or may cause

3    withdrawal symptoms.  (*Id.* at ¶ 44.)  Defendant's website contains a dropdown menu with a

4    disclaimer that states that kratom "may have addictive properties that can cause dependency

5    issues."  (*Id.* at ¶ 45.)  Defendant's packaging uses bright pink and green coloring, flavors such as

6    "Taffy, Huckleberry, Fruit Punch, and Blood Orange[,]" and a hippo mascot named "Puddles,"

7    which deceives the consumer into believing that the product is safe to use.  (*Id.* at ¶ 53.)

8        Plaintiff resides in Stockton, California and has purchased the Products for approximately

9    three years for daily use.  (*Id.* at ¶ 63.)  Plaintiff was recommended kratom by a "smoke shop

10   employee" who did not warn him of the risk of addiction, physical dependence, or the possibility

11   of withdrawal symptoms.  (*Id.*)  In 2022, plaintiff was addicted to kratom and was spending

12   approximately $90 per month to purchase bags of defendant's kratom powder.  (*Id.*)  Shortly

13   thereafter, plaintiff attempted to take a break from kratom and experienced withdrawal symptoms.

14   (*Id.* at ¶ 64.)  Plaintiff has been able to reduce his intake of kratom but still must take it regularly

15   to manage his withdrawal symptoms.  (*Id.*)

16       Plaintiff seeks to represent a class of all persons in California who have purchased

17   defendant's Products (the "California class") and a class of all persons in the United States who

18   have purchased defendant's Products (the "nationwide class").  (*Id.* at ¶ 67.)  On behalf of himself

19   and the California class, plaintiff brings three claims under California law:  (1) violation of

20   California's Unfair Competition Law ("UCL"), California Business and Professions Code

21   §§ 17200, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California

22   Business and Professions Code §§ 17500, *et seq.*; and (3) violation of California's Consumers

23   Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*  (*Id.* at ¶¶ 78–109.)  On

24   behalf of himself and the nationwide class, plaintiff brings three claims:  (1) breach of implied

25   warranty; (2) unjust enrichment; and (3) fraud by omission.  (*Id.* at ¶¶ 110–138.)

26       On October 15, 2024, plaintiff filed the pending motion to proceed under pseudonym.

27   (Doc. No. 3.)  On January 7, 2025, defendant filed a statement of non-opposition in response to

28   that motion.  (Doc. No. 14.)  On December 10, 2024, defendant filed the pending motion to

1   dismiss plaintiff's complaint.  (Doc. No. 10.)  On January 7, 2025, plaintiff filed an opposition

2   and on January 21, 2025, defendant filed its reply thereto.  (Doc. Nos. 12, 18.)

3                                    **APPLICABLE LEGAL STANDARD**

4   **A.      Motion to Proceed Under Pseudonym**

5           "[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed

6   anonymously when special circumstances justify secrecy."  *Does I thru XXIII v. Advanced Textile*

7   *Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).  "In this circuit, . . . parties [may] use pseudonyms in

8   the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person

9   from harassment, injury, ridicule or personal embarrassment.'"  *Id.* at 1067–68 (quoting *United*

10  *States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).  "[A] district court must balance the need

11  for anonymity against the general presumption that parties' identities are public information and

12  the risk of unfairness to the opposing party."  *Id.* at 1068.

13          The Ninth Circuit has identified three situations in which parties have been allowed to

14  proceed under pseudonyms:  "(1) when identification creates a risk of retaliatory physical or

15  mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and

16  highly personal nature; and (3) when the anonymous party is compelled to admit [his or her]

17  intention to engage in illegal conduct, thereby risking criminal prosecution . . . ."  *Id.* (citations

18  and internal quotation marks omitted).  A party requesting to proceed pseudonymously has the

19  burden of showing that their "need for anonymity outweighs prejudice to the opposing party and

20  the public's interest in knowing the party's identity."  *Id.* at 1068–69.  "When a party requests

21  Doe status, the factors to be balanced against the general presumption that parties' identities are

22  public information, are:  (1) the severity of the threatened harm; (2) the reasonableness of the

23  anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation."  *Doe v.*

24  *Ayers*, 789 F.3d 944, 945 (9th Cir. 2015) (internal quotation marks, brackets, and ellipses

25  omitted).

26  **B.      Motion to Dismiss Pursuant to Rule 12(b)(6)**

27          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

28  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).

   In determining whether a complaint states a claim on which relief may be granted, the

court accepts as true the allegations in the complaint and construes the allegations in the light

most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.

United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci

Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).  However, the court need not

assume the truth of legal conclusions cast in the form of factual allegations.  *U.S. ex rel. Chunie v.

Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed

factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S.

at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to

assume that the plaintiff "can prove facts that it has not alleged or that the defendants have

violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal.,

Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**C.**  **Pleading Fraud Pursuant to Rule 9(b)**

   A complaint alleging fraud must also satisfy heightened pleading requirements.  Fed. R.

Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake.").  "Fraud can be averred by specifically alleging fraud, or by

alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)."  *Kearns v.

Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317

1  F.3d 1097, 1107 (9th Cir. 2003)).  "When an entire complaint, or an entire claim within a

2  complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading

3  requirements of Rule 9(b), a district court may dismiss the complaint or claim."  *Vess*, 317 F.3d at

4  1107.

5          "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific

6  enough to give defendants notice of the particular misconduct . . . so that they can defend against

7  the charge and not just deny that they have done anything wrong."  *Kearns*, 567 F.3d at 1124

8  (citation and internal quotation marks omitted).  To satisfy the particularity standard of Rule 9(b),

9  the plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged."  *Id.*

10  (citing *Vess*, 317 F.3d at 1106).

11                              **DISCUSSION**

12  **A.      Plaintiff's Motion to Proceed Under Pseudonym**

13          In plaintiff's pending motion, he argues that his anonymity is necessary because this

14  action involves matters of a highly sensitive and personal nature, specifically drug addiction.

15  (Doc. No. 3 at 3.)  Plaintiff contends that he would face social stigma and embarrassment were he

16  required to disclose his identity.  (*Id.*)

17          First, as to plaintiff's need for anonymity, plaintiff argues that he would face severe social

18  stigmatization and harm if he is not permitted to proceed under a pseudonym because he would

19  be associated with his kratom addiction.  (*Id.*)  Courts have recognized that drug addiction can

20  carry significant social stigma.  *See J.J. v. Ashlynn Mktg. Grp.*, No. 24-cv-00311-GPC-MSB,

21  2024 WL 5130849, at *1–2 (S.D. Cal. Dec. 16, 2024) (finding that the plaintiff would face social

22  stigma as a kratom addict); *see also I.T. v. ChoicePoint LLC*, No. 25-cv-00193-KKE, 2025 WL

23  1082265, at *1 (W.D. Wash. Apr. 10, 2025) (finding that the plaintiffs faced severe reputational

24  harm if they were required to proceed publicly because they disclosed their history with drug

25  addiction) (citing *Lopez v. Pac. Mar. Ass'n*, 657 F.3d 762, 769 (9th Cir. 2011)); *M.O. v.

26  Brightview LLC*, No. 1:25-cv-00015-JPH, 2025 WL 307284 (S.D. Ohio Jan. 27, 2025) (collecting

27  cases from multiple circuits which conclude that drug addiction can create a social stigma).  As

28  noted above however, kratom is not a controlled substance in the United States.  Nonetheless, in

6

1   light of defendant's non-opposition, the court finds that plaintiff's fear that proceeding under his

2   true identity would subject him to social stigma is reasonable and weighs in favor of granting his

3   motion.

4          Second, the court finds that defendant will not be prejudiced if plaintiff is permitted to

5   proceed pseudonymously.  Defendant has filed a statement of non-opposition to plaintiff's motion

6   and therefore has indicated that it will likely not suffer prejudice if the motion were granted.

7   (Doc. No. 14); *see also Doe v. U.S. Citizenship & Immigr. Servs.*, No. 1:21-cv-00576-NONE-

8   SAB, 2021 WL 1907562, at *4 (E.D. Cal. May 12, 2021) (finding that non-opposition to the

9   plaintiff's motion to proceed pseudonymously indicated low prejudice to the defendant); *Al Otro*

10  *Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *6 (S.D. Cal. Dec. 20,

11  2017) ("The failure of the Defendants to articulate such prejudices would suggest little to no

12  prejudice.").  Moreover, the court observes that discovery has not commenced in this action and

13  finds that defendant has not shown any prejudice at this early stage by not knowing plaintiff's

14  name.  *Advanced Textile Corp.*, 214 F.3d at 1072 (finding no prejudice to the defendant if the

15  plaintiff were to proceed under pseudonym prior to discovery).  Further, any potential future

16  prejudice to defendant during discovery could be mitigated through the use of a protective order.

17  *See Doe v. County of El Dorado*, No. 2:13-cv-01433-KJM, 2013 WL 6230342, at *5 (E.D. Cal.

18  Dec. 2, 2013) (finding that use of a protective order would mitigate or eliminate any prejudice to

19  the defendant); *Jane Roes 1–2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 996 (N.D. Cal. 2015)

20  (same).  The court therefore concludes that, especially at this early stage of litigation, defendant

21  will not be prejudiced by plaintiff proceeding pseudonymously at this time.

22         Finally, the court finds that the public's interest would not be served by requiring plaintiff

23  to reveal his identity at this stage in the litigation.  As noted above, plaintiff alleges that defendant

24  is selling an addictive product without warning its consumers.  Disclosure of plaintiff's identity

25  could disincentivize similar lawsuits in the future, which in turn could be contrary to the public's

26  interest.  *See J.J.*, 2024 WL 5130849, at *2 (finding that disclosure of the plaintiffs' names could

27  disincentivize lawsuits which would harm the public's interest); *see also I.T.*, 2025 WL 1082265,

28  /////

at *2 (same).  Therefore, the court concludes that the public interest in disclosure of plaintiff's identity at this time is minimal.

Accordingly, because plaintiff has demonstrated a need for anonymity, and the prejudice to defendant and public interest in disclosure are weak at this stage of the litigation, the court will grant plaintiff's motion to proceed pseudonymously at this stage of the litigation.

**B.    Requests for Judicial Notice and Incorporation by Reference**

Defendant requests that the court take judicial notice of five exhibits, specifically various public records from the National Institute on Drug Abuse, the Department of Health and Human Services, the World Health Organization, and the Food and Drug Administration.  (Doc. No. 10-1 at 2.)  Additionally, defendant requests that its website's "policies and terms of service" be incorporated by reference into the complaint because the complaint references that website.  (*Id.* at 4–5.)  Plaintiff requests that the court take judicial notice of three exhibits, specifically various public records from the Food and Drug Administration.  Defendant and plaintiff both argue that the documents in question are subject to judicial notice because they are public records.  (Doc. Nos. 10-1 at 3–4; 13 at 2.)

The court will grant both defendant's and plaintiff's unopposed requests for judicial notice of the documents described above because those documents are properly the subject of judicial notice as public records or government documents.  *See Full Circle of Living and Dying v. Sanchez*, No. 2:20-cv-01306-KJM-KJN, 2023 WL 373681, at *2 n.2 (E.D. Cal. Jan. 24, 2023) (taking judicial notice of a handbook because it was a public record or government document available from a reliable source on the internet) (citing *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014)); *Woods v. Merkelbach*, No. 2:23-cv-02798-DAD-CKD, 2024 WL 1624171, at *2 n.4 (E.D. Cal. Apr. 15, 2024) (taking judicial notice of government documents obtained from a state department's public website).  The court only takes judicial notice of the existence of these documents and not the truth of the contents therein.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.") (internal quotation marks omitted).

1    The court will also grant defendant's request to incorporate defendant's website into

2    plaintiff's complaint, because plaintiff refers to that website throughout his complaint and

3    concedes in his opposition to the pending motion to dismiss that it is incorporated therein.  (Doc.

4    Nos. 1 at ¶¶ 42–57; 12 at 7); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797,

5    813–14 (N.D. Cal. 2020) (granting request to incorporate by reference contract terms where the

6    plaintiffs' complaint referred to a breach of that contract) (citing *United States v. Ritchie*, 342

7    F.3d 903, 908 (9th Cir. 2003)).

8    **C.    Defendant's Motion to Dismiss**

9        1.    FAL, UCL, and CLRA Claims

10    Defendant argues that plaintiff's FAL claim must be dismissed for three independent

11    reasons:  (1) plaintiff's FAL claim is based solely on an omission which is not actionable under

12    the FAL; (2) plaintiff fails to plausibly allege a duty to disclose; and (3) plaintiff fails to

13    specifically allege reliance.[1]  (Doc. No. 10 at 17–25.)  In moving to dismiss plaintiff's UCL and

14    CLRA claims, defendant relies on the same latter two bases.  (Doc. No. 10 at 15–24.)

15    "Consumer protection claims under the CLRA, FAL[,] and UCL are often analyzed

16    together because they share similar attributes."  *Gutierrez v. Johnson & Johnson Consumer, Inc.*,

17    No. 19-cv-01345-DMS-AGS, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020); *see also*

18    *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 826 (S.D. Cal. 2024) (analyzing the plaintiff's UCL,

19    FAL, and CLRA claims "in tandem" because they were based on overlapping theories of

20    liability).  Here, plaintiff's UCL, CLRA, and FAL claims are all based on defendant's alleged

21    /////

22    /////

23    /////

24    /////

25

26    [1]  Defendant also argues that plaintiff has failed to plausibly allege an omission contrary to a
material representation.  (Doc. No. 10 at 17–20.)  In opposition, plaintiff clarifies that he is not

27    proceeding on a theory that defendant made an omission contrary to a material representation but
instead on a "pure omissions" theory that defendant was required to disclose a fact and failed to

28    do so.  (Doc. No. 12 at 10.)

9

1    failure to disclose the addictive nature of kratom on the Products' packaging.[2]  (Doc. No. 1 at ¶¶

2    81, 95, 105.)  Therefore, below the court will first address whether an FAL claim can be stated on

3    the basis of an omission of a material fact which defendant was required to disclose, before

4    turning to defendant's other arguments.

5              a.    *Omissions under the FAL*

6              Defendant argues that plaintiff's FAL claim fails because it is based solely on an alleged

7    omission—failing to disclose the addictive nature of kratom—rather than an affirmative

8    misrepresentation.  (Doc. No. 10 at 24–25.)  In support of this contention, defendant cites two

9    cases from this district:  *Obertman v. Electrolux Home Care Products, Inc.*, 482 F. Supp. 3d

10   1017, 1025 (E.D. Cal. 2020) and *Stewart v. Electrolux Home Products, Inc.*, 304 F. Supp. 3d 894,

11   904–05 (E.D. Cal. 2018).  (*Id.*)  Plaintiff does not address this argument in his opposition but does

12   concede that his FAL claim is based solely on an alleged omission as opposed to an omission that

13   rendered some affirmative statement made by defendant false.  (Doc. No. 12 at 10.)

14             "Omissions may be the basis of claims under California consumer protection laws, but 'to

15   be actionable the omission must be . . . of a fact the defendant was obliged to disclose.'"

16   *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis removed) (quoting

17   *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).  Following the Ninth

18   Circuit's decision in *Hodsdon*, district courts have found that a plaintiff may state an FAL claim

19   based on a failure to disclose.  *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067,

20   _____

21   [2]  In its motion to dismiss, defendant argues in relation to an "omission contrary to a material
      representation" theory of liability that it has already sufficiently disclosed the addictive nature of

22   kratom on its website.  (Doc. No. 10 at 17–19.)  In its reply, defendant argues for the first time
      that this disclosure also bars plaintiff's "pure omission" theory of liability.  (Doc. No. 18 at 6.)

23   However, plaintiff's claim is based on the omission of a warning regarding the addictive nature of
      kratom on the Products.  (Doc. Nos. 1 at ¶ 84 ("Defendant had a duty to consumers to disclose *on*

24   *the Products' labels* that their Products pose a risk of physical and psychological dependence.")
      (emphasis added); 12 at 20 (noting that plaintiff did not allege visiting defendant's website prior

25   to purchasing the Products and could not have relied on statements therein)); *see also O'Shea v.
      Epson Am., Inc.*, No. 09-cv-08063-PSG-CW, 2010 WL 11459911, at *5 (C.D. Cal. Mar. 5, 2010)

26   (rejecting the defendant's argument that additional disclosures on its website barred the plaintiffs'
      omissions claim based on the products' packaging).  Accordingly, to the extent that plaintiff

27   alleges that he relied on the Products' packaging and the omission of a warning therein regarding
      the potentially addictive nature of kratom, the court rejects defendant's argument.

28

1  1101 (N.D. Cal. 2021) ("California appellate courts have held that a claim may be stated under

2  the CLRA, UCL, and [FAL] in terms constituting fraudulent omissions so long as the omission is

3  contrary to a representation actually made by the defendant or the omission is of a fact the

4  defendant was obliged to disclose.") (internal quotation marks omitted); *see also Burchfield v.*

5  *Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1202 (C.D. Cal. 2021) (finding that

6  the plaintiffs had stated a cognizable FAL claim based on an alleged omission where they had

7  also alleged that the defendant had a continuous duty to disclose the concealed fact); *Grausz*, 713

8  F. Supp. 3d at 826 (finding that the liability for omissions under the CLRA, FAL, and UCL

9  overlap and that omission of a fact that the defendant had an affirmative duty to disclose is

10  actionable under those statutes). The court therefore rejects defendant's argument that an FAL

11  claim cannot be stated on the basis of an omission of a fact which defendant had a duty to

12  disclose. *Gamino v. Spin Master, Inc.*, No. 23-cv-02242-DMG-SP, 2025 WL 1421907 (C.D. Cal.

13  Mar. 31, 2025) ("To the contrary, California allows omissions-based FAL claims if there is a duty

14  to disclose the relevant information.") (citing *People v. Johnson & Johnson*, 77 Cal. App. 5th

15  295, 325 (2022)).

16      In this regard, the court finds that defendant overstates the applicability of the holdings in

17  *Obertman* and *Stewart* to resolution of its motion to dismiss. In both of the cases upon which

18  defendant relies, the respective plaintiffs contended that the defendant had made partial

19  representations about their products but had concealed defects in those products. *Stewart*, 304 F.

20  Supp. 3d at 904 ("[T]hey contend instead that Electrolux concealed the oven's defect.");

21  *Obertman*, 482 F. Supp. 3d at 1024 ("Here, plaintiff bases his fraud claims primarily on the

22  contention that defendant 'made partial representations to Plaintiff and class members while

23  suppressing the Products' defective nature[.]'"). By contrast, plaintiff's claim asserted here is not

24  based on alleged partial representations but instead upon a "pure omission" where defendant had

25  a duty to disclose a certain fact and failed to do so. (Doc. No. 12 at 10.) Neither *Stewart* nor

26  *Obertman* address whether a cognizable FAL claim may be stated based on an omission of a

27  /////

28  /////

11

1    fact that a defendant had an affirmative duty to disclose.[3]  Here, plaintiff alleges that defendant

2    omitted that kratom was potentially addictive from the Products' packaging and had a duty to

3    disclose as such.  (Doc. No. 1 at ¶¶ 84, 136.)  Accordingly, those cases provide no support for

4    defendant's motion to dismiss plaintiff's FAL claim.

5                        *b.      Duty to Disclose*

6         Defendant argues that plaintiff has not alleged that it had an affirmative duty to disclose

7    kratom's addictive nature.  (Doc. No. 10 at 20–22.)  Specifically, defendant contends that plaintiff

8    has not properly alleged that kratom constitutes an unreasonable safety hazard.  (*Id.* at 20–21.)

9    Defendant also argues that plaintiff has not alleged that it had superior or exclusive knowledge of

10   the dangers posed by kratom.  (*Id.* at 20–22.)  Plaintiff counters that two other courts have found

11   that allegations similar to the ones here were sufficient to allege that kratom constituted an

12   unreasonable safety hazard.  (Doc. No. 12 at 11–13.)  Plaintiff also argues that defendant had

13   superior knowledge of the dangers posed by kratom because it is still a largely-unknown drug

14   within the United States.  (*Id.* at 13–18.)

15        "Courts have noted that the law concerning a defendant's duty to disclose in a fraudulent

16   omissions case is 'marked by general disarray.'"  *Hammerling v. Google LLC*, 615 F. Supp. 3d

17   1069, 1085 (N.D. Cal. 2022) (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp.

18   3d at 1101.  This is because there are two conflicting tests that have been employed in

19   determining whether a defendant has a duty to disclose.  *Id.*  Those two tests either:

20   /////

21

_____

22   [3] Defendant's argument may be based on an outdated view of the FAL, because district courts
     were previously split as to whether an FAL claim could be stated on the basis of an omission.  *See*

23   *Hodson v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016) (summarizing this split
     among federal courts); *see also Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1090

24   (N.D. Cal. 2017) (finding that an FAL claim must be based on an affirmative representation and
     not a pure omission); *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 969 (N.D. Cal. 2016)

25   ("The plain language of the statute—which prohibits *making*, *disseminating*, or *causing* the
     dissemination of false or misleading statements—does not encompass omissions."); *Dana v.*

26   *Hershey Co.*, 180 F. Supp. 3d 652, 668–69 (N.D. Cal. 2016) (collecting cases and concluding that
     the FAL does not permit actions based on pure omissions).  As discussed above, however, the

27   Ninth Circuit has since resolved that split.  *Hodson*, 891 F.3d at 865 ("Absent a duty to disclose,
     Plaintiff's CLRA, UCL[,] and FAL claims are foreclosed.").

28

1
2
3
4

> (1) . . . requir[e] plaintiffs to "allege one of the four *LiMandri* factors"[4] *in addition to* a safety hazard or an effect on central product functionality to state a pure-omission claim, or (2) . . . permit[] plaintiffs to plead an actionable omission on the basis of *either* one of the *LiMandri* factors *or* by alleging a safety hazard or defect to central product functionality.

5  *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1102.[5]  The court need not

6  determine which test applies, however, because it concludes below that plaintiff has both

7  adequately alleged an unreasonable safety hazard and the presence of the second *LiMandri* factor.

8      In alleging the existence of an unreasonable safety hazard, a plaintiff must allege "a

9  sufficiently close nexus between the claimed defect and the alleged safety issue[.]"  *Williams v.*

10  *Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017).  A plaintiff does not need to allege that

11  he has already been injured, but "must describe more than merely conjectural and hypothetical

12  injuries."  *Id.* (internal quotation marks omitted).  To allege exclusive knowledge in keeping with

13  the second *LiMandri* factor, plaintiff must allege that defendant "knew of this defect while

14  plaintiff[] did not, and, given the nature of the defect, it was difficult to discover."  *Collins v.*

15  *eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011).  "Courts, however, have not applied this

16  requirement with rigidity.  . . .  It is generally sufficient for defendants to have had superior

17  knowledge and for the information to have not been reasonably discoverable by the plaintiffs."

18  *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1014–15 (N.D. Cal. 2020) (internal quotation marks

19  omitted).

20      Plaintiff's complaint alleges the addictive nature of kratom.  In particular, plaintiff alleges

21  as follows.  Kratom is "extremely addictive" and operates on "the same opioid receptors in the

22
23
24
25

[4]  "The *LiMandri* factors are:  (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts."  *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

26
27
28

[5]  Other courts appear to have applied yet a third test where a plaintiff can establish a duty to disclose either by:  (1) alleging an unreasonable safety hazard *without* a requirement for the presence of one of the *LiMandri* factors; or (2) alleging that there is a material defect central to product functionality *and* the presence of one of the *LiMandri* factors.  *See Barton v. Proctor & Gamble Co.*, 766 F. Supp. 3d 1045, 1066 (S.D. Cal. 2025).

1    human brain as morphine, heroin, and other opioids do[.]"  (Doc. No. 1 at ¶ 1.)  "All substances

2    that act on the opioid receptors carry a high risk of addiction, and kratom is no exception."  (*Id.* at

3    ¶ 19.)  Kratom users are usually unaware of this addictive potential and will misinterpret their

4    early withdrawal symptoms such that they will take more kratom.  (*Id.* at ¶ 22.)  These

5    withdrawal symptoms "are very similar to those of traditional opioid withdrawal" as described

6    above.  (*Id.* at ¶ 20.)  Finally, plaintiff himself suffered from "terrible withdrawal effects" such as

7    "headaches, soreness, restless leg syndrome, cold sweats, . . . , and trouble sleeping."  (*Id.* at ¶

8    64.)  The court finds that these factual allegations are sufficient, if proven, to establish an

9    unreasonable safety hazard which may give rise to an affirmative duty to disclose.  *See J.J. v.*

10   *Ashlynn Mktg. Grp.*, 749 F. Supp. 3d 1086, 1099 (S.D. Cal. 2024) (finding that substantially

11   similar allegations regarding kratom were sufficient to allege an unreasonable safety hazard); *see*

12   *also B.D. v. MIT45, Inc.*, No. 3:24-cv-00499-L-DEB, Doc. No. 10, at 12 (S.D. Cal. July 3, 2024)

13   (same).[6]

14           Defendant argues in reply that plaintiff's allegations are untrue.  (Doc. No. 18 at 7.)  In

15   support of this contention, defendant cites to documents which it has requested the court take

16   judicial notice of, specifically a website from the National Institute on Drug Abuse regarding

17   kratom.  (*Id.*)  The court has taken judicial notice of these documents, but not their contents.

18   *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court cannot take

19   judicial notice of disputed facts contained in such public records.").  The court must "accept

20   factual allegations in the complaint as true[.]"  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

21   F.3d 1025, 1031 (9th Cir. 2008).  "The court need not, however, accept as true allegations that

22   contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to

23   accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

24

25   ───────────────
     [6]  Defendant argues in its reply that the district court's in these cited decisions did not find that
     kratom actually posed an unreasonable safety hazard.  (Doc. No. 18 at 7.)  However, in both
26   cases, the district courts resolved motions to dismiss applying the standard applicable to motions
     brought under Federal Rule of Civil Procedure 12(b)(6).  *See J.J.*, 749 F. Supp. 3d at 1092; *B.D.*,
27   Doc. No. 10 at 6–7.  The undersigned therefore finds these cases to be instructive in determining
     whether the similar factual allegations advanced here provide a sufficient bases upon which to
28   allege an unreasonable safety hazard.

1   unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

2   (internal citations omitted).  Here, defendant argues that the contents of the documents which are

3   subject to judicial notice show that expert organizations in the United States have not yet fully

4   determined whether kratom is addictive.  (Doc. Nos. 10 at 20–21; 18 at 7.)  However, multiple of

5   these documents state that kratom potentially creates physical dependence and can cause

6   withdrawal symptoms.  (Doc. No. 10-2 at 9 ("Studies suggest people may experience mild to

7   moderate withdrawal symptoms when they stop regular kratom use."); 10-4 at 14 (World Health

8   Organization report describing how opioid-like withdrawal symptoms have been reported in

9   humans upon cessation of kratom use)).  This does not contradict the allegations in plaintiff's

10  complaint.  Because plaintiff has alleged specific withdrawal symptoms he has suffered and based

11  on the lack of conflict between his allegations and defendant's documents, the court rejects

12  defendant's argument in this regard.  *See also J.J. v. Ashlynn Mktg. Grp.*, No. 24-cv-00311-GPC-

13  MSB, 2025 WL 1811854, at *16 (finding that the plaintiff had adequately alleged the addictive

14  nature of kratom based on specific allegations of her withdrawal symptoms and because "some of

15  Defendant's proffered documents conclude that kratom does have addictive potential.").

16          Defendant next argues that plaintiff has not alleged that it had exclusive knowledge of the

17  addictive nature of kratom, as required to satisfy the second *LiMandri* factor.  (Doc. No. 10 at 20–

18  22.)  It contends that plaintiff had the same publicly-available information in this regard as

19  defendant, citing to documents that the court has taken judicial notice of which discuss the

20  possible addictive nature of kratom.  (Doc. No. 10 at 21.)  Defendant also contends that plaintiff's

21  allegations regarding its knowledge of kratom's risks are generalized and conclusory and

22  therefore fail to meet the pleading standard required by Federal Rule of Civil Procedure 9(b).  (*Id.*

23  at 21–22.)  Plaintiff responds that he has alleged methods by which defendant had knowledge of

24  the addictive effects of kratom and that publicly-available information regarding kratom does not

25  preclude defendant from having superior knowledge as to its addictive nature.  (Doc. No. 12 at

26  13–14.)

27          Here, plaintiff alleges on information and belief that defendant "has interacted with

28  growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to

it." (Doc. No. 1 at ¶ 33.)  Plaintiff similarly alleges on information and belief that defendant

imports kratom from Thailand, and cites in support of that allegation a link to defendant's website

where it offers for sale kratom branded as Thai.  (*Id.* at ¶ 39.)  Plaintiff also alleges that defendant

has "received numerous user reports about the addictive potential of kratom[.]"  (*Id.* at ¶ 34.)

Defendant argues that these allegations are insufficient under Rule 9(b) because they do not

indicate the reasonable basis for plaintiff's information and belief.  (Doc. No. 10 at 22.)

However, plaintiff, in his complaint and opposition to the pending motion, cites to defendant's

website in support of his allegation that defendant purchases Thai kratom and has contacted

Indonesian farmers regarding kratom.  (Doc. Nos. 1 at ¶ 39; 12 at 15.)  These citations to

defendant's website support a plausible inference that defendant has contacted growers and was

informed of the addictive nature of kratom.  *See Tri Tool, Inc. v. Hales*, No. 22-cv-01515-DAD-

KJN, 2023 WL 7130610, at *6 (E.D. Cal. Oct. 30, 2023) (finding that an allegation which relied

on information and belief that was based on facts could support an inference of misconduct); *see

also J.J.*, 749 F. Supp. 3d at 1099–1100 (finding that the plaintiff had alleged knowledge of

kratom's addictive potential based on similar allegations); *B.D.*, Doc. No. 10 at 10–11 (finding

that allegations that the defendant "specializes in kratom extracts" was sufficient to establish that

it would be aware of the opiate-like quality of kratom).  Moreover, the Rule 9(b) pleading

standard is relaxed with respect to allegations of exclusive knowledge.  *In re Toyota RAV4

Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1099 ("This relaxed standard allows Plaintiffs to

plead exclusive knowledge through the somewhat generalized allegations in the complaint.")

(citing Fed. R. Civ. P. 9(b)).  Accordingly, the court concludes that plaintiff has sufficiently

alleged that defendant knew, or should have known, about the addictive nature of kratom.

      The court finds defendant's argument that plaintiff had access to the same public

information as defendant and therefore did not have superior knowledge of the addictive qualities

of kratom to be unpersuasive.  (Doc. No. 10 at 20–21.)  Though plaintiff's complaint does refer to

publicly available medical literature, "the presence of information online does not automatically

defeat exclusive knowledge."  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960

(N.D. Cal. 2014).  Defendant relies on a number of reports from expert organizations which

1    discuss whether kratom is addictive in attempting to show that the relevant information was

2    publicly available.  (Doc. No. 10 at 20–21.)  However, a reasonable consumer is not expected to

3    search for, read, and understand current medical literature.  *See In re JUUL Labs, Inc. Mktg.,*

4    *Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 629 (N.D. Cal. 2020) (finding that the

5    plaintiffs had sufficiently alleged that the defendant had exclusive knowledge of the potency and

6    addictiveness of its product even where it had publicly disclosed such in a patent application

7    because a reasonable consumer would not understand the patent disclosure); *see also Falk v. Gen.*

8    *Motors Corp.*, 496 F. Supp. 2d 1088, 1096–97 (N.D. Cal. 2007) (finding the plaintiffs had

9    sufficiently alleged that the defendant had exclusive knowledge of a defect because the plaintiffs

10   were not required to do an internet search for product complaints prior to their purchase); *Kulp v.*

11   *Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1169–70 (C.D. Cal. 2023) (finding the plaintiff had

12   sufficiently alleged that the defendant had exclusive knowledge of a defect mentioned in online

13   reviews because the plaintiff had only limited publicly available information regarding the

14   defect).  Moreover, as described above, here plaintiff has alleged that defendant gained

15   knowledge of the addictive potential of kratom through its private contact with growers, thereby

16   providing support for its assertion of exclusive knowledge.  *See Salas v. Toyota Motor Sales,*

17   *U.S.A., Inc.*, No. 15-cv-08629-FMO-E, 2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016)

18   (finding that the plaintiffs had sufficiently alleged exclusive knowledge of a car defect which was

19   the subject of public complaints because the plaintiffs alleged that the defendant had private

20   information regarding the defect); *see also In re Toyota Motor Corp. Unintended Acceleration*

21   *Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1191–92 (C.D. Cal. 2010)

22   (making the same finding and noting further that, while the plaintiffs "could have been tipped

23   off" to the defect by conducting a search of past complaints, they were not expected to have done

24   so).  Accordingly, the court rejects defendant's argument that the public availability of

25   government and medical reports regarding the dangers of kratom use negates plaintiff's

26   allegations of its superior knowledge.

27        Because plaintiff has alleged that the addictive nature of kratom constitutes an

28   unreasonable safety hazard and that defendant had exclusive knowledge of that fact, the court

1    concludes that plaintiff has sufficiently alleged an affirmative duty on the part of defendant to

2    disclose.

3                          c.      *Reliance*

4          Defendant next argues that plaintiff has not alleged reliance on defendant's omission in

5    making his purchase decision as required.  (Doc. No. 10 at 23.)  Plaintiff contends that his

6    allegation that he would not have purchased the Products had he known that they were "highly

7    addictive, by way of a warning on the Products' packaging" is sufficient to satisfy the reliance

8    requirement.  (Doc. Nos. 1 at ¶ 64; 12 at 19.)

9          To state a claim under the UCL, CLRA, and FAL, a plaintiff must allege reliance upon a

10   misrepresentation or omission.  *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 799

11   (N.D. Cal. 2024).  "In order to show actual reliance, whether based on an affirmative

12   misrepresentation or a material omission, Plaintiffs must demonstrate that the misrepresentation

13   or omission was an immediate cause of the injury-causing conduct."  *Sud*, 229 F. Supp. 3d at

14   1083 (internal quotation marks omitted) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326

15   (2009)).  In the case of an omission, a plaintiff satisfies this requirement by alleging "that, had the

16   omitted information been disclosed, one would have been aware of it and behaved differently."

17   *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (internal quotation marks

18   omitted) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)).  Here, plaintiff has

19   alleged that he would not have purchased the Products if their packaging included a warning

20   regarding kratom's addictive properties.  (Doc. No. 1 at ¶ 64.)  This is a sufficient basis on which

21   to allege reliance upon an omission under the UCL, CLRA, and FAL.  *See Sud*, 229 F. Supp. 3d

22   at 1083–84 (finding that the plaintiffs' allegation that they would not have purchased a product if

23   the packaging disclosed the labor abuses involved in the creation of the product was sufficient to

24   allege reliance); *see also Anderson*, 500 F. Supp. 3d at 1018 (finding that the plaintiffs had

25   sufficiently alleged reliance by alleging an omission of material information, that the plaintiffs

26   reviewed marketing materials regarding the product, and that the plaintiffs would not have made

27   their purchase had the defendant disclosed the material information); *J.J.*, 749 F. Supp. 3d at

28   1097–98 (finding that the plaintiffs had alleged reliance where they alleged that they would not

                                          18

1   have purchased kratom had the defendant disclosed information regarding its addictive potential

2   on product packaging).  Accordingly, the court concludes that plaintiff has sufficiently alleged

3   reliance.

4          Because the court has concluded that an FAL claim may be based on a pure omission and

5   that plaintiff has alleged an affirmative duty to disclose and his reliance on defendant's omission,

6   the court will deny defendant's motion to dismiss plaintiff's UCL, FAL, and CLRA claims.

7          2.   Breach of Implied Warranty Claim

8          Defendant also moves to dismiss plaintiff's breach of implied warranty claim, arguing that

9   plaintiff is not in privity with defendant.  (Doc. No. 10 at 25.)  Plaintiff does not respond to this

10  argument in his opposition brief.

11         "A plaintiff asserting breach of an implied warranty must be in vertical privity with the

12  defendant.  Because vertical privity requires the buyer and seller to be in *adjoining links* of the

13  distribution chain[,] . . . an end consumer . . . who buys from a retailer is not in privity with a

14  manufacturer."  *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1088 (S.D. Cal. 2019)

15  (internal quotation marks and citations omitted) (alterations in original) (quoting *Clemens v.*

16  *DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)).  Plaintiff alleges that he purchased

17  the Products from a smoke shop and does not allege that he purchased any of them directly from

18  defendant.  (Doc. No. 1 at ¶ 63.)  Because plaintiff has not alleged that he was in vertical privity

19  with defendant, the court will grant defendant's motion to dismiss plaintiff's breach of implied

20  warranty claim.

21         3.   Unjust Enrichment Claim

22         Defendant next moves to dismiss plaintiff's unjust enrichment claim on the ground that

23  there is no cause of action for unjust enrichment.  (Doc. No. 10 at 27.)  "In California, there is not

24  a standalone cause of action for unjust enrichment, but [w]hen a plaintiff alleges unjust

25  enrichment, a court may construe the cause of action as a quasi-contract claim seeking

26  restitution."  *Rodriguez v. Mondelèz Glob. LLC*, 703 F. Supp. 3d 1191, 1213 (S.D. Cal. 2023).

27  Here, plaintiff alleges that defendant has been unjustly enriched by plaintiff and members of the

28  putative nationwide class paying for its products when defendant failed to disclose that the

Products were addictive, and that allowing defendant to retain this benefit would be "unjust and inequitable." (Doc. No. 1 at ¶ 123.) Such allegations are sufficient to state a quasi-contract cause of action. *See James v. Chocmod USA Inc.*, 773 F. Supp. 3d 945, 962–63 (E.D. Cal. 2025) (concluding that the plaintiffs had sufficiently alleged an unjust enrichment claim because they had alleged a conferred benefit that was inequitable for the defendant to retain based on its misleading advertising) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). Accordingly, the court will deny defendant's motion to dismiss plaintiff's unjust enrichment claim.

4.    Fraudulent Omission Claim

Finally, defendant moves to dismiss plaintiff's fraudulent omission claim based upon the same arguments it has advanced in contending that plaintiff has failed to allege his FAL, UCL, and CLRA claims. (Doc. No. 10 at 27; 18 at 13.) Because the court has concluded that plaintiff has sufficiently alleged facts which state FAL, UCL, and CLRA claims on the basis of a fraudulent omission theory, the court concludes that plaintiff has also sufficiently stated a fraudulent omission claim. Accordingly, the court will deny defendant's motion to dismiss plaintiff's fraudulent omission claim.

**D.    Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

Plaintiff has requested leave to file an amended complaint to address any deficiencies identified by the court in this order. (Doc. No. 25 at 24.) It appears unlikely, unless plaintiff can

1    allege that he purchased some of the Products directly from defendant, that plaintiff can state a

2    cognizable claim for a breach of implied warranty.  Nevertheless, out of an abundance of caution,

3    the court will grant plaintiff leave to amend his complaint.

**CONCLUSION**

5        For the reasons above,

6    1.    Plaintiff's motion to proceed under pseudonym at this time (Doc. No. 3) is

7              GRANTED;

8    2.    Defendant's motion to dismiss (Doc. No. 10) is GRANTED in part as follows:

9          a.    Defendant's motion to dismiss plaintiff's fourth claim for breach of

10                implied warranty is GRANTED with leave to amend; and

11          b.    Defendant's motion to dismiss is otherwise DENIED;

12    3.    Plaintiff shall file any first amended complaint he elects to file, or alternatively a

13              notice of his intent not to do so, within twenty-one (21) days from the date of entry

14              of this order;

15    4.    If plaintiff files a notice of intent not to file a first amended complaint, then

16              defendant shall file an answer as to the claims found to be cognizable in this order

17              within twenty-one (21) days of service of that notice; and

18    5.    In accordance with the court's prior order (Doc. No. 21), the court hereby

19              RESETS the Initial Scheduling Conference in this case for August 25, 2025 at

20              1:30 PM before the undersigned via Zoom.  The parties may file a joint status

21              report containing any additional scheduling information that they wish the court to

22              consider, not included in their previously filed joint status report (Doc. No. 20), no

23              later than August 11, 2025.

24        IT IS SO ORDERED.

25    Dated:  **July 16, 2025**

26                                                          DALE A. DROZD
                                                            UNITED STATES DISTRICT JUDGE